UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MELISSA GIBSON, individually and as next )
friend for BRITTANY ANDERSON, )
    Plaintiff, )
) 1:10-cv-00330-LJM-TAB
  vs. )
)
INTERNATIONAL BUSINESS MACHINES )
CORPORATION, )
    Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on defendant's, International Business Machines Corporation ("IBM"), Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 21.

## I. BACKGROUND

For purposes of this Order, the Court accepts as true the well-pleaded factual allegations from the Amended Complaint. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d. 614, 618 (7th Cir. 2007). Plaintiff, Brittany Anderson ("Anderson"), suffers from a severe seizure disorder. Am. Compl. ¶ 2. Because of her limited income, she qualified for coverage under Indiana's Medicaid program, which is administered by Indiana's Family and Social Services Administration (the "FSSA"). *Id.* ¶¶ 2, 4. Pursuant to the Master Services Agreement (the "MSA") between IBM and the State of Indiana, IBM participated in the administration of Indiana's Medicaid program with the FSSA. *Id.* ¶¶ 9, 10; *see* Def.'s Ex.

A (the MSA)¹. Specifically, IBM communicated with current and prospective Medicaid recipients regarding eligibility criteria and procedures for obtaining Medicaid benefits. *Id.* ¶ 10. Based on information gleaned from these communications, IBM submitted recommendations to the FSSA. *Id.* ¶¶ 11, 21, 38. However, although IBM submitted "cases to be closed," *id.* ¶ 38, the FSSA made the final determination of whether a current or prospective recipient was eligible for Medicaid benefits. *Id.* ¶ 10.

Between Anderson's eighteenth and nineteenth birthdays, IBM recommended that the FSSA terminate Anderson's Medicaid benefits. *Id.* ¶ 21. IBM "did not develop facts related to [Anderson's] qualification for Medicaid as a disabled adult." *Id.* When Gibson learned of the potential termination of Anderson's Medicaid benefits, she repeatedly contacted IBM to inquire about Anderson's continued receipt of Medicaid benefits. *Id.* ¶ 22. Gibson received conflicting messages from IBM and did not receive assistance in her attempts to ensure Anderson's continued receipt of Medicaid benefits. *Id.*

On March 10, 2008, an IBM employee told Gibson that Anderson would have to re-apply for Medicaid benefits. *Id.* ¶ 23. When Gibson attempted to submit Anderson's application, an IBM employee told Gibson that an application for Anderson had already been received and the new application would not be accepted or processed. *Id.* ¶ 24. From March 2008 through October 2008, every time that Gibson called IBM to inquire, IBM told Gibson that Anderson's case was "pending." *Id.* ¶ 26. During this time, although Gibson and Anderson signed release forms allowing IBM to access Anderson's medical

---

¹ Gibson has no objection to the Court's consideration of the MSA as part of the Amended Complaint. In addition, Gibson attached Schedule 1 of the MSA ("Schedule 1) for the Court to consider. Pls.' Ex. 1 (Schedule 1).

2

information, IBM did not contact Anderson's medical providers to obtain this information. *Id.* ¶¶ 27-28. As a result, the FSSA never received Anderson's medical information. *Id.* ¶ 28.

On October 29, 2008, Gibson filed another application on Anderson's behalf. *Id.* ¶ 29. Again, Gibson contacted IBM on multiple occasions to inquire as to the status of Anderson's Medicaid benefits. *Id.* IBM failed to demonstrate any further progress on Anderson's application. *Id.* ¶ 30.

Gibson asserts that Anderson's application was never processed because IBM failed to properly train and supervise its employees. *Id.* ¶ 38. In addition, IBM's document-processing center routinely lost documents submitted by those seeking to obtain or continue receiving Medicaid benefits. *Id.* As a result, current or prospective Medicaid recipients were not given correct information regarding their rights and obligations. *Id.* Furthermore, IBM haphazardly submitted cases to the FSSA for closure without investigating the facts supporting entitlement to Medicaid benefits. *Id.* Lastly, IBM routinely neglected to forward appeals to the FSSA after a claimant was denied Medicaid benefits. *Id.*

It was only after the State of Indiana terminated the MSA and Anderson's struggle was featured on Channel 13 News that the FSSA reinstated Anderson's Medicaid benefits. *Id.* ¶ 31. While Anderson was without health coverage, a medical device that had been surgically implanted into her chest to control her seizures failed. *Id.* ¶ 32. Because Anderson had no health coverage, she could not afford to pay for corrective surgery. *Id.* As a result, Anderson endured numerous seizures and her overall health suffered. *Id.* ¶¶ 32-33. In addition, Anderson was forced to withdraw from her high school due to her

persistent seizures.  *Id.* ¶ 33.

Based on the foregoing facts, Gibson claims that IBM violated Anderson's Fourteenth Amendment rights by terminating her Medicaid benefits without due process. In addition, Gibson asserts a claim for negligence under Indiana law.  IBM argues that it is not a state actor and, therefore, it cannot be held liable under § 1983.  In addition, IBM argues that it did not owe a duty to Anderson and, accordingly, it cannot be held liable in tort.  The Court has considered the parties' arguments and rules as follows.

## II. **STANDARD**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but a plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully."  *Id.*   "[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type

4

of notice of the claim to which the defendant is entitled under Rule 8." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal quotation marks omitted). "[T]he height of the pleading requirement is relative to the circumstances[,]" *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), and "[d]etermining the plausibility of a claim is a context-specific task that requires [the Court] to draw on [its] judicial experience and common sense." *Brown v. JP Morgan Chase Bank*, No. 08-1890, 2009 WL 1761101, at * 1 (7th Cir. June 23, 2009); *see also Swanson v. Citibank*, *N.A.*, No. 10-1122, 2010 WL 2977297, at *2 (7th Cir. July 30, 2010) (instructing that one of the "key questions" is "how much detail realistically can be given . . . about the nature and basis or grounds of the claim.").

### III. **DISCUSSION**
### A. GIBSON'S § 1983 CLAIM

"When a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Servs.*, 577 F.3d 816, 822 (7th Cir. 2009). IBM is not exempt from § 1983 liability merely because it is a private actor. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988). Rather, "the state action doctrine requires that a court find such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Rodriguez*, 577 F.3d at 823 (internal quotation marks omitted). Therefore, as a private actor, IBM acts "under color of state law" if it is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). In addition, if the State delegates a "traditionally exclusive public function" to IBM, IBM can be considered a state actor for §

1983 purposes. *West v. Atkins*, 487 U.S. 42, 55-56 (1988). "[T]he relevant question is not simply whether a private group is serving a 'public function.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). Rather, "the question is whether the function performed has been traditionally the *exclusive* prerogative of the State." *Id.* (internal quotation marks omitted) (emphasis in original).

Gibson asserts that she stated a claim that IBM participated in joint action with the State of Indiana and is, accordingly, a state actor. However, the only plausible inference from the Amended Complaint is that the FSSA and, by extension, the State of Indiana were unaware of IBM's alleged wrongdoing. *See* Am. Compl. ¶ 38 ("Defendant withheld critical information from FSSA . . . about extensive, system-wide failures in factual development and misapplication of eligibility rules and polices that caused Medicaid benefits to be terminated[.] . . . Defendant's actions were taken in Defendant's own self-interest to avoid contractual sanctions from FSSA."). Therefore, the avenue of attributing "state actor" status to IBM by alleging that IBM participated in joint action with the FSSA is foreclosed by the allegations of the Amended Complaint. *Compare Cunningham v. Southlake Ctr. for Mental Health*, 924 F.2d 106, 107-08 (7th Cir. 1991) (holding there was no issue of fact as to whether state action was present where the evidence indicated that a private actor terminated plaintiff in retaliation for exercising his First Amendment rights and there was no evidence that any state actor was motivated by this unconstitutional purpose), *with Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 281-82 (7th Cir. 1986) (holding there was an issue of fact as to whether state action was present where a private group of defendants terminated plaintiff's employment, but plaintiff demonstrated that the private group conspired with a public group to take action after plaintiff criticized the public group).

However, the Court's analysis does not end there, as Gibson also argues that IBM acted under color of state law by exercising functions that were traditionally exclusively reserved to the State of Indiana. *West*, 487 U.S. at 55-56; *cf. Rodriguez*, 577 F.3d at 828 n.18 ("If the assistance is undertaken under the affirmative direction of the state, or in collaboration with the state, the activity may be considered to be state action, independent of the public function doctrine."). In *West*, the Supreme Court held that a physician who was under a private contract with the State could be subject to § 1983 liability where the physician was responsible for fulfilling the State's Eighth Amendment duty to provide adequate medical care to those the State incarcerated. *Id.* In so holding, the Supreme Court noted that "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can be fairly attributable to the State." *Id.*

The Seventh Circuit had occasion to apply *West*'s language in *Cunningham*. 924 F.2d at 106. There, the plaintiff was an employee of Southlake Center For Mental Health, Inc. ("Southlake"), which contracted with the state to provide mental health services to inmates. *Id.* Southlake terminated Cunningham's employment, and Cunningham filed suit under § 1983, alleging that the Center retaliated against him for speaking out about sexual harassment at the Lake County Jail. *Id.* at 107. The Seventh Circuit held that no state action was present because, unlike the plaintiff in *West*, Cunningham was not dependent upon the state to provide for his medical needs. *See id.* at 109 ("Without more than the mere fact that his employer places him for work in a government facility, Cunningham cannot legitimately claim the same view of his employer" as an inmate does of his or her physician.).

7

The Seventh Circuit further analyzed the "public function test" in *Vickery v. Jones*. 100 F.3d 1334 (7th Cir. 1996). In *Vickery*, the plaintiff's brother was the Chairman of an Illinois county Republican Central Committee. *Id.* at 1337. While Chairman, the plaintiff's brother recommended plaintiff to the Illinois Department of Transportation ("IDOT") for hire as a temporary highway maintainer. *Id.* IDOT hired plaintiff and he worked as a temporary highway maintainer for six months. *Id.* During the month preceding the expiration of plaintiff's contract, plaintiff's brother had ceased to be a Republican County Chairman. *Id.* The successor Chairman recommended someone else for plaintiff's position, and plaintiff sued the successor Chairman, among others, for violating his rights under the First and Fourteenth Amendments. *Vickery v. Jones*, 856 F.Supp. 1313, 1317 (S.D. Ill. 1994). The Seventh Circuit held that for "applicant screening" to meet the traditional government function test, the successor Chairman would have had to have been to be responsible for the hiring of the public employee, and in *Vikery*, "[t]he hiring decisions remained in the hands of the State." 100 F.3d at 1345 ("Advocating the hiring of an applicant for employment does not fall into a category of activities that are exclusively the government's.").

In a more recent case, the plaintiff was an inmate in a Wisconsin prison. *Rodriguez*, 577 F.3d at 819. After he began experiencing abdominal pain and spitting up blood, an ambulance from the Plymouth Ambulance Service ("Plymouth") arrived at the prison to transport Rodriguez to a hospital. *Id.* En route to St. Agnes Hospital ("St. Agnes"), one of the emergency medical technician-paramedics ("EMT") employed by Plymouth inserted a temporary intravenous line ("IV") into Rodriguez's right arm. *Id.* at 819-20. When he arrived at St. Agnes, Rodriguez was informed that St. Agnes did not have an active medical

account with the prison, and St. Agnes transferred Rodriguez to Waupan Memorial Hospital ("Waupan Memorial"). Eventually, Rodriguez's arm began to bleed, swell, and ooze pus, and when he returned to prison, the prison staff determined that Rodriguez had contracted methicillin-resistant staphylococcus aureus. *Id.* at 820.

Rodriguez sued, among others, Plymouth's EMTs, St. Agnes, and Waupan Memorial under § 1983, alleging all were deliberately indifferent to his legitimate medical needs in violation of the Eighth Amendment. *Id.* at 822, 830. The Seventh Circuit held Rodriguez's allegations that the EMTs ignored his complaints of pain were sufficient to state an Eighth Amendment claim. *Id.* at 830. However, the court indicated that before determining whether the EMTs were state actors, discovery was necessary to analyze the relationship of Plymouth and its EMTs to the prison system or to Rodriguez. *Id.* Specifically, the court noted the importance of discovering "whether Plymouth rendered [its] service by contract with the prison system or as part of a municipal service available to all persons needing emergency medical care in the area." *Id.*

As to St. Agnes, the court noted Rodriguez's allegation that St. Agnes declined to assume the state's responsibility to provide medical care to Rodriguez. *Id.* at 831. Accordingly, the Seventh Circuit held that Rodriguez failed to state a § 1983 claim against St. Agnes because St. Agnes had not voluntarily assumed any of the state's duties and, accordingly, did not operate under color of state law. *Id.* Lastly, the court noted Rodriguez's allegation that he was placed in a prison ward of Waupan Memorial, which strongly suggested that Waupan Memorial had an ongoing relationship with the prison. *Id.* Accordingly, the court held that the allegations of Rodriguez's complaint sufficiently attributed state actor status to Waupan Memorial. *Id.*

The differences and similarities between the above cited cases and this case are instructive as the Court traverses through this fact sensitive area of the law. *See Rodriguez*, 577 F.3d at 823 (recognizing that the Supreme Court's tests for courts to employ in evaluating the "range of circumstances that might constitute state action . . . are susceptible to semantic variations, conflations and significant overlap in practical application [and] lack rigid simplicity.") (internal quotation marks and citation omitted). The *Cunningham* court strongly suggested that one of the state's traditional public functions is providing medical care to those without an alternative source. 924 F.2d at 109. In *Cunningham*, of course, the court was referring to prisoners' dependence on the state to meet their medical needs; but, in the Court's opinion, indigent persons such as Anderson are similarly dependent on the state to provide them with health coverage.[2]

In addition, IBM had a contractual relationship with the State of Indiana through which it voluntarily undertook certain obligations of the FSSA. *See generally* Schedule 1. This is a consideration that the *Rodriguez* court relied upon in holding that St. Agnes was not a state actor and that Waupan Memorial and, possibly, Plymouth's EMTs were. 577 F.3d at 830-31. The Court notes IBM's quote from a press release issued by Governor Daniels. Def.'s Reply. Br. at 5. However, the Court does not agree that the (redacted) quote supports IBM's position because the quote evidences the "ongoing relationship" that the FSSA has with contractors such as IBM. *See Rodriguez*, 577 F.3d at 831.

Next, in *Vickery*, the court indicated that when a private party lacks final decision

---

[2] Other cases also support the notion that the provision of health coverage is a traditional public function. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 261-62 (1970); *Thompson v. Roob*, No. 1:05-cv-0636, 2006 WL 2990426, at *6 & n.7 (S.D. Ind. Oct. 19, 2006) (Barker, J.).

making authority, or, stated otherwise, when the state retains final decision making authority, the private party is not acting under color of state law. 100 F.3d at 1345. IBM argues that because the FSSA retained final authority for Medicaid eligibility determinations, IBM cannot be held liable as a state actor.[3] *See* Am. Compl. ¶ 10, ("State staff continued to take most of the final eligibility actions in a case"); MSA at § 3.1.1(1) ("The [FSSA] shall have and shall retain final responsibility for eligibility determinations[.]"). However, although the State of Indiana did not relinquish its responsibility to make an ultimate determination regarding a claimant's entitlement to Medicaid benefits, it wholly relied upon IBM to provide information upon which the FSSA's ultimate determination would be based. Am. Compl. ¶¶ 10-11; MSA at § 3.1.1(1) ("The [FSSA] shall have and shall retain final responsibility for eligibility determinations . . . , which determinations will be made in part in reliance upon the performance by [IBM] of the Services."). Furthermore, the quote from Governor Daniels' press release suggests that the FSSA was, at least, relying on private contractors to exercise an amount of (unchecked) discretion in the performance of their duties. *See* Def.'s Reply Br. at 5 ("FSSA is a buyer, not a provider of social services, and always has been.").

---

[3] Curiously, IBM did not cite *Vickery* in its brief, instead relying on a case from the Sixth Circuit to support its position on this issue. *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993). Contrary to IBM's argument, a complete analysis of *Hicks* supports Gibson's position as the two justifications offered for that decision are distinguishable from those of the case at bar. Unlike the plaintiff's claim in *Hicks*, which was premised on departures from the private entity's policies, in this case, Gibson's claim is premised upon IBM's alleged policies. *Compare id.* at 1458, *with* Am. Compl. ¶ 38. Furthermore, the district court in *Hicks* recognized that the private entity at issue would be a proper defendant but for the lack of evidence of direct involvement in any decision to deny Hicks' medical care. *Id.* at 1458. In this case, Gibson alleges that IBM was directly involved with the decision to deny Anderson's Medicaid benefits.

This is more discretion than was entrusted to Locke in *Hicks*. *See* 992 F.2d at 1458 ("When Hicks' doctors prescribed the oyster shell brace and AFO splints, Locke could not order them on her own of CMS's authority[.] . . . Locke's job was to see that CMS provided medical services in accordance with the policies established by the fiscal court."). Furthermore, as discussed above, unlike *Vickery* and *Cunningham*, which both dealt with adverse employment actions, this is a case where access to health care is at issue.[4] *See Mitchell v. St. Elizabeth Hospital*, 119 F. App'x 1, 2 (7th Cir. 2004) ("The theory behind the Supreme Court's recognition of state action [in *West*] was that the state had delegated a function for which it could not disclaim responsibility."). The Court recognizes that the relevant inquiry takes into account not only amount of discretion that has been chipped away from the state in performing the public function, but also the purported public function that has been delegated. *See West*, 487 U.S. at 55-56.

When a state decides to participate in the Medicaid program, it must comply with due process standards. *Goldberg v. Kelly*, 397 U.S. 254 (1970). Accepting Gibson's allegations as true, it is evident that the State of Indiana entrusted substantial decision making authority to IBM, which affected the State's ability to abide by its constitutional obligations. Am. Compl. ¶¶ 10-11; MSA at s. 3.1.1(1); Schedule 1. In the Court's opinion, when the state's ability to perform in accordance with constitutional standards is entrusted to a private actor, the actor can be held liable under § 1983. *Cf. Wade v. Byles*, 83 F.3d 902, 906 (7th Cir. 1996) ("*West* indicates that a state cannot limit its accountability for the performance of functions that it has an affirmative constitutional obligation to provide.").

---

[4] The *Cunningham* court primarily (perhaps exclusively) relied on this distinction in arriving at its holding. 924 F.2d at 109.

Accordingly, with respect to state action, the Court concludes that Gibson's allegations are sufficient to state a § 1983 claim.  *Cf. Banks*, 997 F.2d at 246-47 (affirming the district court's dismissal of Banks' Fourteenth Amendment claim that private entities deprived her and her husband of her husband's Medicaid benefits without due process because Banks did not allege that the actions of the private entities were the actions of the state government); *Echemendia v. Gene B. Click Mgmt. Corp.*, 199 F. App'x 544, 548 (7th Cir. 2006) (holding plaintiff did not have reasonable likelihood of success on the merits of her claim that corporation deprived her of her welfare benefits without due process, because plaintiff did not allege that the corporation's actions "were the actions of . . . the state government, and private actions are beyond the reach of the . . . Fourteenth Amendment[]").

Through discovery it may come to light that the FSSA was not a mere rubber stamp for IBM's recommendations, or that IBM could not ensure the denial of a current or prospective recipient's Medicaid benefits through its inaction.  If that is the case, the Court is open to revisiting this issue.

### B.  GIBSON'S NEGLIGENCE CLAIM

In her Amended Complaint, Gibson alleges that IBM's "negligence . . . prohibited Ms. Anderson . . . from continuing to receive [health coverage] despite continuing eligibility." Am. Compl. ¶ 3.  IBM argues that it owed no duty to Anderson and, therefore, cannot be held liable in tort.  "The existence of a duty is ordinarily a question of law which is determined by the court."  *Benthall v. City of Evansville,* 674 N.E.2d 580, 583 (Ind. Ct. App. 1996).

13

Gibson argues that IBM's duty arose out of the nature of IBM's relationship with the State of Indiana and, by extension, Anderson. In support, Gibson directs the Court to the Restatement (Second) of Torts, which "parallels Indiana's doctrine of assumed duty." *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1263 n.4 (Ind. Ct. App. 1989). Pursuant to Section 324A,

> One who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). According to Gibson, under the terms of the MSA, IBM undertook an obligation to render services to the FSSA, which it should have recognized as necessary for the protection of current or prospective beneficiaries. Am. Compl. ¶ 3. Accordingly, Anderson suffered harm because the FSSA and, by extension, Anderson relied upon IBM's undertaking. *Id.*

IBM responds by directing the Court to the MSA's exculpatory clause, which provides: "[n]o person or entity shall be deemed a third-party beneficiary under or by reason of this Agreement." MSA § 21.6. IBM argues that this clause disclaims any tort liability for Anderson's, or any other third person's, alleged injuries. However, "the lack of a contractual duty, third party or otherwise, . . . does not foreclose the possibility that [IBM] owed [Anderson] a duty in tort." *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 675 (7th Cir. 1992). "Third persons not parties or privy to such a contract are not bound by it." *Vernon*

14

*Fire & Cas. Ins. Co. v. Graham*, 336 N.E.2d 829, 832 (Ind. Ct. App. 1975); *see Morris v. McDonald's Corp.*, 650 N.E.2d 1219, 1222-23 (Ind. Ct. App. 1995) ("While a party can ordinarily contract out his duty to exercise reasonable care with respect to another contracting party via a simple exculpatory provision, a party cannot contract out of his duty to exercise reasonable care with respect to third parties."); *see also* Factory *Mut. Ins. Co. v. Bobst Grp., Inc.*, 319 F.Supp.2d 880, 882-83 (N.D. Ill. 2004) (concluding that plaintiff sufficiently pled a negligence claim premised on § 324A, and that defendant could not rely on exculpatory clause to foreclose a duty to third parties). Accordingly, the MSA's exculpatory clause has no bearing on whether IBM owed Anderson a duty in tort.

IBM has not directed the Court to any authority discussing § 324A in support of its argument. Accordingly, for purposes of this Order, the Court concludes that Gibson has sufficient alleged a cause of action in negligence premised on that Section of the Restatement (Second) of Torts.

## IV. CONCLUSION

For the foregoing reasons, defendant's, International Business Machines Corporation ("IBM"), Motion to Dismiss (Dkt. No. 21) is **DENIED**.

IT IS SO ORDERED this 8th day of October, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Scott R. Severns
SEVERNS & STINSON
Attorney for Plaintiffs
10293 N. Meridian Street, Suite 150
Indianapolis, Indiana 46290
sseverns@severns.com

Anna M Howard
SEVERNS & STINSON
Attorney for Plaintiffs
10293 N. Meridian Street, Suite 150
Indianapolis, Indiana 46290
amh@severns.com

Aaron D. Charfoos
Steven D. McCormick
Elizabeth J. Kappakas
KIRKLAND & ELLIS LLP
Attorneys for Defendant
300 North LaSalle
Chicago, IL 60654
acharfoos@kirkland.com

Andrew W. Hull
HOOVER HULL LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244
awhull@hooverhull.com